**SIGNED THIS: December 08, 2005**

_____
**LARRY LESSEN
UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

In Re                          )
                               )    In Bankruptcy
GEORGE PAUL SADORUS,           )
                               )    Case No. 05-73411
         Debtor.               )

## O P I N I O N

The issue before the Court is whether the attorney and law firm which represented the Debtor should be sanctioned for filing false schedules and advising the Debtor not to appear at the meeting of creditors in order to get the bankruptcy case dismissed.

The Debtor, George Sadorus, received a lump sum payment of $16,000 from his children in 2004 as the repayment of a loan. By the end of 2004, Mr. Sadorus had $12,000 left.

Despite the cash in the bank, Mr. Sadorus was having financial

problems. He saw an ad for credit counseling on television and called the number given on the screen. He was told that his monthly payment on a debt consolidated plan would be $767. Because his only income was a monthly social security check of $747, it was apparent that credit counseling was not a viable option for him. The credit counseling firm referred the Debtor to The Price Law Group of Encino, California.

The Debtor never met with anyone from The Price Law Group in person. All communications with The Price Law Group were by telephone or email. The Price Law Group has around 20 attorneys. Most of the Debtor's communications were with three attorneys - Jason Bedell, Curt Hennecke, and Raj Wadhwani - and a non-attorney employed by The Price Law Group, Vicki Carrion. Mr. Wadhwani became the attorney of record for the Debtor after Mr. Hennecke left The Price Law Group.

The Debtor testified that he told The Price Law Group about the $8,000 that he still had on hand in the spring of 2005. The Debtor did not want any of those funds going to his unsecured creditors and he was concerned about whether these funds would be exempt if he filed bankruptcy. He testified that Ms. Carrion told him that these funds were absolutely exempt.

Shortly before the bankruptcy case was filed, The Price Law Group called the Debtor to conduct a telephone consultation review. The Debtor was not home, so Mr. Bedell talked to the Debtor's wife,

Joan Sadorus, who was not planning on joining her husband in the bankruptcy case. When Mr. Bedell asked about bank accounts, Mrs. Sadorus said there was $500 in her bank account. In fact, there were two bank accounts - Mr. Sadorus' account with over $6,000 and Mrs. Sadorus' account with $500.

The Debtor filed a petition pursuant to Chapter 7 of the Bankruptcy Code on March 30, 2005. The case was assigned number 05-71597. Schedule B shows two checking accounts at the First Bank of Decatur with a total value of $500. These funds were claimed as exempt in Schedule B. Mr. Wadhwani was the attorney who signed the petition on behalf of The Price Law Group. The Disclosure of Compensation shows that The Price Law Group received $1,000 for its legal services.

As it turns out, the Debtor actually had over $6,500 in his bank account when the petition was filed.

The first meeting of creditors was set for May 3, 2005. The Price Law Group retained Brian Finney, a lawyer in Decatur, Illinois, to cover the meeting of creditors. When the Debtor met with Mr. Finney before the creditors' meeting, Mr. Finney had the petition that was filed that showed $500 in the bank account and the petition that was supposed to be filed which showed $8,000 in the bank account. Mr. Finney told him that he did not think the $8,000 would be exempt under Illinois law. This news alarmed the Debtor because the Debtor stated that he would not have filed

bankruptcy if he had known that this money was not exempt.

The news from Mr. Finney that the $8,000 in the bank might not be exempt generated a call to The Price Law Group. The Debtor talked to Mr. Bedell and Mr. Wadhwani, who agreed with Mr. Finney's assessment that the money would not be exempt. The attorneys advised the Debtor not to appear at the meeting of creditors. According to Mr. Sadorus, the attorneys advised him not to go to the first meeting or the continued meeting and that the case would then be dismissed. Once the case was dismissed, they advised him to spend the money and then to re-file after the money was gone. The Debtor testified that Mr. Bedell told him to say that he was sick for the first meeting and that he forgot the second meeting.

The Debtor testified that Mr. Bedell, not Mr. Wadhwani, advised him not to appear at the creditors' meeting. Mr. Bedell denied telling the Debtor not to appear or to make up excuses. Mr. Bedell also denied any knowledge about the $8,000 in the bank. The Court did not find Mr. Bedell to be a credible witness. The Price Law Group had at least one draft of the Debtor's bankruptcy petition that included the $8,000 so it is clear that the Debtor told the law firm about the $8,000. In addition, Mr. Wadhwani admitted that they advised the Debtor not to appear at the creditors' meeting. Thus, Mr. Bedell's testimony is inconsistent with the other testimony before the Court.

Mr. Wadhwani testified that they told the Debtor not to appear

at the first meeting of creditors because they intended to amend the bankruptcy schedules to show that the bank account had $8,000 in it rather than the $500 that was listed in the original schedules. Mr. Wadhwani testified that he advised the Debtor to amend his schedules, but the Debtor did not want to amend his schedules and lose the asset. Mr. Wadhwani did not have anything in writing to document this advice, and the schedules were never amended. Mr. Wadhwani denied telling the Debtor not to appear at the continued meeting of creditors.

The first meeting of creditors was set for May 3, 2005. Mr. Finney appeared at the meeting and advised the Trustee that the Debtor was not there. The meeting of creditors was continued to May 17, 2005. When the Debtor failed to appear for the continued meeting, the Trustee filed a Motion to Dismiss on May 19, 2005, which the Court allowed on May 23, 2005. The case was closed on July 7, 2005.

On June 24, 2005, the instant case - No. 05-73411 - was filed. The Debtor did not remember filing this case. The Price Law Group filed this case on behalf of the Debtor with Mr. Wadhwani once again as the attorney of record. The Price Law Group did not charge the Debtor for this filing.

The schedules in the new case were substantially the same as those in the first petition. There was no reference to the money that the Debtor had in the bank ($5,000 to $8,000) when he filed

-5-

his first petition or what happened to the money. The Debtor testified that he did not discuss with the Price attorneys whether the money was spent; Mr. Wadhwani testified that the Debtor told him that the money was used to pay bills.

The evidence showed that the Debtor withdrew $5,228.97 from his bank account on May 10, 2005. This lump sum withdrawal reduced the balance in the account to zero. The Debtor testified at the hearing that he did not remember making this withdrawal. In an affidavit submitted after the hearing, the Debtor stated that the money was withdrawn from the account because he thought he lost his checkbook. These funds were transferred to a new account at the bank. Thus, the funds never left the bank. The new account was not listed in the second bankruptcy filing.

Because the failure to attend a meeting of creditors is a failure to abide by a court order within the meaning of 11 U.S.C. § 109(g)(1), the Court set a hearing for August 4, 2005, for the Debtor to appear and show cause why the case should not be dismissed because it was filed within 180 days of a case that was dismissed for willful failure to abide by a court order. Two days before the show cause hearing, the meeting of creditors was held. The Trustee learned at the first meeting that the Debtor had $5,000 in his bank account when the first case was dismissed. The Trustee also heard the Debtor's explanation for not appearing at the creditors' meeting in the first case. The issues raised at this

hearing caused the Court to set an additional hearing "concerning the accuracy of the debtor's schedules, the basis for the debtor's failure to appear at the first meeting of creditors in the prior bankruptcy, and such other matters as are relevant to the inquiry of the Trustee and this Court."  Mr. Wadhwani and the Debtor were ordered to appear personally.

The Debtor fired The Price Law Group on August 2, 2005, because they told him to go to Court and lie.  The Debtor is now represented by Johnson, Waller, and Chiligiris.

Mr. Bedell left The Price Law Group on August 5, 2005.  Mr. Bedell is not licensed to practice in this Court, and he did not sign any documents in either of the Debtor's cases.

Mr. Wadhwani also left The Price Law Group in August, 2005, although he retains an *of counsel* affiliation with the firm for cases he was involved in prior to leaving.  Mr. Wadhwani is admitted to practice in this Court.  Mr. Wadhwani stated in his closing argument that The Price Law Group is no longer accepting new cases in the state of Illinois.  This has proven to be a false representation.  Makoto Shuttleworth of The Price Law Group has filed four cases in this District in October: In re Gamauf, No. 05-93817, In re Henry, No. 05-86186, In re Gillespie, No. 05-86353, and In re Lareau, No. 05-94395.  In addition, Curt F. Hennecke of The Price Law Group has filed five cases in October: In re Dampier, No. 05-75617, In re Denton, No. 05-75618, In re Watkins, No. 05-

93815, In re Baine, No. 05-93816, and In re Wolf, No. 05-85810.

The Court was not impressed with Mr. Wadhwani's testimony. The Court is always suspicious when attorneys do not have documents to support their testimony, and Mr. Wadhwani did not have any of the documents prepared by the Debtor in preparation for the filing of his cases and he did not have any documents to corroborate his advice to the Debtor to amend his schedules.

The Bankruptcy Court has both the express and inherent authority to regulate the attorneys who practice before it.

The Bankruptcy Court is a unit of the District Court. 28 U.S.C. § 151. Rule 83.6 of the United States District Court for the Central District of Illinois provides that the court has the "power and responsibility to supervise the conduct of attorneys who are admitted to practice before it..." Rule 83.6(A) provides that an attorney who is "guilty of conduct unbecoming a member of the bar of this court" is "subject to suspension, disbarment, or other appropriate disciplinary action by the court." Rule 83.6(D) adopts the Rules of Professional Conduct adopted by the Supreme Court of Illinois.

Moreover, 11 U.S.C. § 329(b) empowers the Bankruptcy Court to review a debtor's transactions with attorneys. Compensation which exceeds the reasonableness of an attorney's services must be disgorged. 11 U.S.C. § 329(b). An attorney's unethical conduct is a factor to be considered in determining the reasonableness of a

legal fee paid by a debtor.  In re Soulisak, 227 B.R. 77 (Bankr. E.D. Va. 1998).

The Bankruptcy Court also has the inherent power to suspend or disbar attorneys:

> Disbarment proceedings "are not for the purpose of punishment, but rather seek to determine the fitness of an official of the court to continue in that capacity and to protect the courts and the public from the official ministration of person [sic] unfit to practice."

In re Derryberry, 72 B.R. 874, 881 (Bankr. N.D. Ohio 1987), *citing* In re Echeles, 430 F.2d 347, 349 (7th Cir. 1970).

The level of service provided by The Price Law Group to the Debtor in these proceedings was far below the minimum standard expected of attorneys who practice in this Court.  To begin with, the work done was sloppy.  The evidence showed that there were at least two drafts of the Debtor's bankruptcy petition in the first case and the wrong one was filed.  On a more serious note, The Price Law Group gave the Debtor bad legal advice.  The Debtor's main concern in his decision to file bankruptcy was whether his cash in the bank was exempt.  The Price Law Group incorrectly told the Debtor that the money was exempt.  The fact that this advice came from a non-attorney employed by The Price Law Group is irrelevant; The Price Law Group should not have placed her in a position where she would be giving legal advice without the supervision of an attorney.  Most seriously, the actions of The Price Law Group were unethical.  The advice to skip the creditors'

meetings (and lie about the reasons for missing them) and the advice to spend the money in the bank account before filing a new case clearly violated the spirit and intent of the Bankruptcy Code.

The filing of the second petition without accounting for the money in the bank or what happened to it also violated the Bankruptcy Code. The attorneys with The Price Law Group knew that the schedules in both cases were inaccurate and took no action to correct them. Finally, the second petition may have been filed without the knowledge or permission of the Debtor. He did not remember signing the second petition and he clearly did not want it filed when he had a substantial sum in his bank account.

The consequences of the poor representation provided to the Debtor by The Price Law Group may be dire for the Debtor. The Trustee has filed an adversary complaint objecting to the Debtor's discharge based on the Debtor's concealment of the money in the bank account. The Trustee also seeks a money judgment against the Debtor. Thus, the Debtor could lose his discharge and his money.

The Price Law Group must bear the ultimate responsibility for this fiasco. At least three attorneys and one non-attorney with Price touched this file. It is not clear whether the problems in this case were caused by poor lawyering, the left hand not knowing what the right hand is doing, or the difficulties inherent in trying to represent an Illinois debtor in an Illinois bankruptcy court from an office in California. Whatever the cause of the

problems, the services provided by The Price Law Group afforded absolutely no benefit to the Debtor.  Therefore, the Court will order The Price Group to disgorge the entire $1,000 fee it received in this case to Mr. Sadorus.  In addition, the Trustee's fees and costs are assessed against The Price Law Group.  The Trustee is directed to submit an application documenting his fees and costs.

As the primary attorney for Mr. Sadorus and the attorney who signed both bankruptcy petitions, Mr. Wadhwani must also bear some of the responsibility for the mishandling of these cases.  The Court will suspend Mr. Wadhwani from the practice of bankruptcy law in the Central District of Illinois.  The Court will lift the suspension upon a showing by Mr. Wadhwani that he has completed 10 hours of continuing legal education courses in bankruptcy, including at least two hours devoted to ethics.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###